# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PERRION ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WARDEN GLADYS DEESE, DEPUTY ) | CIVIL ACTION NO. |
| WARDEN FRANK ALBRIGHT, ) | 2:05-CV-1236-MHT |
| LIEUTENANT LENITA HAWTHORNE, ) | |
| PRISON HEALTH SERVICES, DR. ) | |
| SAMUEL ENGLEHARDT, MARION ) | |
| WRIGHT, R.N. and NURSE MOBLEY, ) | |
| LPN, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF CATHERINE MOBLEY

STATE OF ALABAMA     )
                                          )
COUNTY OF MONTGOMERY  )

Before me, the undersigned Notary Public, personally appeared CATHERINE MOBLEY who, after being duly sworn, states as follows:

1. My name is Catherine Mobley. I am over the age of nineteen (19) years, and I have personal knowledge of the information contained in this affidavit.

2. I began working for Prison Health Services, Inc. ("PHS") as a licensed practical nurse ("LPN") at the Julia Tutwiler Prison for Women ("Tutwiler") on or about November 3, 2003. The last occasion that I worked at Tutwiler was on or about November 10, 2005. I am currently licensed as a LPN by the state of Alabama

3. On occasions, I dispensed medication to inmates during pill call at Tutwiler. During pill call, I dispensed medication prescribed for the inmates at Tutwiler. I was not

90974.2

authorized to alter inmate's medication regimen. I did not refuse Ms. Roberts any medication. Ms. Roberts did not tell me she was allergic to any medication during pill call. If Ms. Roberts had told me during pill call she was allergic to any medication, I would have notified her treating physician.

4. I did not examine Perrion Roberts at any time during my employment as a LPN at Tutwiler other than the specific incident identified in this Affidavit.

5. I have reviewed a document Bates-labeled PHS0060, which accurately reflects my interaction with Ms. Roberts on March 21, 2005. Ms. Roberts visited the Health Care Unit seeking medical care on March 21, 2005. I examined Ms. Roberts on this occasion. Her condition on arrival appeared to be "good." During this March 21, 2005 visit, Ms. Roberts told me she was allergic to "ASA" or acetaminophen. She did not report any other allergies to me. Ms. Roberts told me, "I took to much of that medicine and it made me feel funny." Ms. Roberts reported she had taken 600 milligrams of Motrin and 650 milligrams of Tylenol. Upon review of Ms. Roberts's medical records, I found these medications were prescribed for Ms. Roberts. I was aware of Ms. Roberts's statement that she was allergic to acetaminophen or Tylenol, but as a LPN, I did not have any authority to cancel or alter in any way Ms. Roberts's existing prescription for Tylenol. During Ms. Roberts's March 21, 2005, visit to the Health Care Unit, there were limitations on the medical care I was authorized to provide to her in my position as a LPN. My authority was limited to examining her, providing her instructions to possibly provide some comfort, sending her to the local emergency room if she appeared to have a life-threatening condition or referring her to the prison physician. Since Ms. Roberts did not appear to have a life-threatening condition, I was limited to bringing her March 21, 2005, visit to the Health Care Unit to the attention of the treating physician through appropriate documentation of the visit.

During my physical examination of Ms. Roberts, I found that she was "alert and oriented," ambulating without difficulty and did not have signs of a rash. I instructed Ms. Roberts to rest in bed and "drink a lot of fluids and only take as much meds as needed." I directed Ms. Roberts to drink "fluids" as treatment for the excessive amounts of Motrin and Tylenol that she reported taking. Ms. Roberts was released from the Health Care Unit in "satisfactory" condition. I told Ms. Roberts to return to the Health Care Unit if she experienced any additional problems. Ms. Roberts did not return that evening or otherwise notify me that she was continuing to experience any problems.

6. During my interaction with Perrion Roberts on March 21, 2005 I did not ignore any of Ms. Roberts's complaints or refuse to provide her any type of medical treatment which I was authorized to provide. I did not administer any medication to Ms. Roberts at any time or refuse to provide Ms. Roberts with any medication.

Further affiant saith not.

_Catherine Mobley_
Catherine Mobley

SWORN TO and SUBSCRIBED before this the 20th day of March, 2006

_[signature]_
Notary Public
My Commission Expires: 7/29/08

(SEAL)