# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **PERRION ROBERTS,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**WARDEN GLADYS DEESE, DEPUTY** )<br>**WARDEN FRANK ALBRIGHT,** )<br>**LIEUTENANT LENITA HAWTHORNE,** )<br>**PRISON HEALTH SERVICES, DR.** )<br>**SAMUEL ENGLEHARDT, MARION** )<br>**WRIGHT, R.N. and NURSE MOBLEY,** )<br>**L.P.N.,** )<br>)<br>**Defendants.** ) | **CIVIL ACTION NO.**<br>**2:05-CV-1236-MHT** |

### AFFIDAVIT OF WINFRED WILLIAMS, M.D.

**STATE OF ALABAMA**    )
                        )
**COUNTY OF MONTGOMERY** )

Before me, the undersigned Notary Public, personally appeared WINFRED WILLIAMS, M.D. who, after being duly sworn, states as follows:

1. My name is Winfred Williams, M.D. I am over the age of nineteen (19) years, and I have personal knowledge of the information contained in this affidavit.

2. I am a licensed physician in the state of Alabama. I am currently employed by Prison Health Services, Inc. ("PHS") as the Medical Director at Julia Tutwiler Prison for Women ("Tutwiler").

3. Perrion Roberts ("Roberts") is an inmate currently incarcerated at Tutwiler.

4. Except for delivering psychotropic medications to inmates during the pill call process conducted by PHS, PHS is not responsible for any mental health care provided to

90971.1

inmates at Tutwiler. Psychotropic medications must be prescribed by the mental health care provider at Tutwiler and cannot be prescribed by the PHS physicians at Tutwiler. If the medical staff becomes of aware of an actual or potential mental health problem, the medical staff refers inmates to the mental health care provider at Tutwiler. Lexapro is a psychotropic medication that may only be prescribed by the mental health care provider at Tutwiler.

5. On or about June 30, 2005, I assumed responsibility for the management of all general medical care for inmates at Tutwiler following Dr. Englehardt's decision to limit his activities at Tutwiler to gynecological and obstetric care.

6. I saw Ms. Roberts on October 10, 2005 for treatment of join pain and discomfort associated with rheumatoid arthritis. During this appointment, Ms. Roberts told me her pain was "tolerable" and "she has received her medications and pleased, but wants them KOP." I explained the KOP process to Ms. Roberts and noted that she seemed to be eligible for the program. Following this appointment, I ordered lab work for Plaintiff and the medication Percogesic, instructed the medical staff to consider enrolling Plaintiff in the KOP program and directed her to return for a follow-up appointment in 2 to 3 weeks.

7. I reacted to Ms. Roberts's requests for medical treatment in a timely and appropriate way. I based my decisions regarding Ms. Roberts's medical treatment upon my medical judgment at that time. I had to evaluate the benefits of controlling Ms. Roberts's pain through medication against exposing Ms. Roberts to the unavoidable side effects caused by some of the medications utilized to treat this condition when providing medical treatment and medications to Ms. Roberts. This is common with patients suffering from rheumatoid arthritis. Neither did I refuse to provide Ms. Roberts with medical treatment nor did I ignore any of her

complaints. If Ms. Roberts notified me that she had not received treatment and medication ordered by me, I took steps to ensure that Ms. Roberts received treatment and medication.

Further affiant saith not.

_____
Winfred Williams, M.D.

SWORN TO and SUBSCRIBED before this the 20 day of March, 2006

_____
Pamela S. Berwin
Notary Public
(SEAL)                My Commission Expires: _____

My Commission Expires 11-19-2006

90971.1                                    3