**In The District Court Of The United States**
**For The Middle District Of Alabama**

RECEIVED

Perrion Roberts # 159113
          Plaintiff

2006 JUN 15  A 10: 05

vs.

U.S. DISTRICT COURT                 2:05 - CV - 1236 - MHT

Gladys Deese, et al.,
          Defendadts.

**Memorandum Of Law In Opposition To Defendants**
**Summary Judgment Request And Special Report**

Plaintiff Perrion Roberts ("Roberts") respectfully submits this memorandum of law in opposition to the defendant's summary judgment request and special report with her exhibits including a declaration pursuant to 28 U.S.C. section 1746.

Pursuant to 28 U.S.C. 1331 and 1343 (a) (3) this court has jusisdiction over plaintiff's federal claim.

**Statement of the Case**

This is a section 1983 action filed by a prisoner at Julia Tutwiler Prison For Women seeking damages, a declaratory judgment, and injunctive relief based on the inadequate medical care, the denial of procedural due process and the denial of medical care. Defendants have filed a request fir summary judgment as to the plaintiff's inadequate medical care claim against defendants' Deese, Albright, Hawthorne, PHS, Dr. Englehardt, Wright and Mobley, arguing that their conduct did not violate the Constitution.

**Statement of Facts**

The plaintiff's declaration submitte in response to the defendants' request states that on the morning of April 21, 2004, the defendants refused her the medication in which she brought with her and threw it away leaving her in excurciating pain. From the time she arrived until the filing of this complaint December, 2005 she has received substandard medical care fron the defendants'. She has been denied Trade School because of her disability. but was assigned to housekeeping which caused her arm to loose mobility and caused her unneccessary pain from carring 20lb or more in housekeeping suppiies, she has been in housekeeping for two (2) years. The defendants' refuse to honor the outside specialist recommendations. They refused to give plaintiff a stronger pain medication. It took defendants' eleven months to send plaintiff to an rheumatologist after finding out about her condiction. The defendants' refused to respond to plaintiff request about her medical care. The defendant Prison Health Services (PHS) lacked follow-up made mistakes in prescribing drugs and gave substandard medical care to the plaintiff. Defendant Englehardt was untrained in internal medical care, heis a retired obstetrician and should not have been providing internal medical care to plaintiff at Tutwiler. He was employed at Tutwiler during the time of the incidents he was the primary doctor foreveryone no matter what their illness was. Defendants' gave plaintiff to much medication and medication that was not hers. Defendants' made a body chart on plaintiff without her even being present. They also change dates on her MAR. Defendants refused to check her when she complained that her heart was fluttering  Despite outside letters to defendants about plaintiffs medical care they still refuse to respond. Defendants' telling plaintiff that she must

learn to live with pain and drink some water to ease the pain. Plaintiff arthritis medication was out for approximately fifty-three (53) days. Defendants' prescribed medication and did not ever give it to her. Defendant Mobley gave plaintiff medication that she was allergic to and another inmates medication, she refused to treat plaintiff as an overdose patient instead she told her "to stop acting", to drink water and just go to sleep. Plaintiff's medication was not Keep on Personal (KOP) at that time. There is medication to stop the progression and pain of Rheumatoid Arthritis (RA). Plaintiff arm is fused because defendants continued to ignore the seriousness of plaintiff condition and the specialist and X-Rays can prove that her arm is fused. Tht defendants affidavits tell a different story. They claim that when the plaintiff came to Tutwiler that she didn't have any medication with her. They claim that they gave her a job in housekeeping temporarily until her arm healed, thus denying her the opportunity to attend Trade School because of her disability which is federal funded. They claim that they immediately took plaintiff to a rheumatoid specialist. That they couldn't give nor prescribe medication from plaintiffs surgeon. And that they prescribed plaintiff with pain medication. They claim that plaintiff arthritis medication was not out for almost 60 days. They claim that they did follow-ups and honored what the specialist recommended. They claim that plaintiff has no claim on PHS. Defendant Mobley claim that she did't even give plaintiff any medication that plaintiff told her that she had took too much medication. Defendants' claim that they were never notified of plaintiffs disability.They claim that there is no medication that will stop pain or slow down the progession or rheumatoid arthritis. They claim that they did a body chart on plaintiff when she complained of her heart fluttering. They are claiming that her injuries,

don't exist. They claim that when notified of plaintiffs problem they passed it on to someone else. They also claim that therapy and medication cost too much.

## Argument

The standards for summary judgment are well settled. The moving party bears the burden of establishing that there are no genuine issues of material fact in dispute. See, e.g., Consarc Corp v. Marine Midland Bank, N.A., 996 F .2d 568,572 (2d Cir. 1993). This standard precludes the court from resolving disputed issues of fact. Instead, the court must deny summary judgment if there are material factual issues. See, e.g., Knight v. U.S. Fire Ins. Co., 804 F .2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987), In assessing whether there are factual issues, the court is to view the evidence in the light most favorable to the non-moving party and draw all permissible inferences in that party's favor. See, e.g. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 247 (1986). Assessments of credibility, conflicting versions of events and the weight to be assigned to evidence are for the jury, not the court, See id. at 255.

## I. There Are Genuine Issues Of Material Fact That Preclude Summary Judgment For The Defendants' On The Plaintiffs Inadequate Medical Claim

Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c) Fed.R.Civ.P. "A material fact is one that" might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The affidavits/declaration of the  plaintiff and the defendants' are squarely contradictory as to what medical care was used, when it was used, why and how it was used. The

allegations in the plaintiff's declaration potray a completely needless use of inadequate medical care against an inmate that has a serious disability. There is clearly a genuine issue of fact.

The factual dispute is also material under the governing law, whether the inadequate medical care violates the Eighth Amendment depends on whether it was applied in a good-faith effort to maintain or restore good health or maliciously and sadistically to cause harm. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain and is the source of claims for inadequate medical care under section 1983. The Eighth Amendment requires prison officials to provide prisoners with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). This is true regardless of whether the medical care is provided by governmental employees or by private medical staff under contract with the government. West v. Atkins., 487 U.S. 42, 57-58 (1988); Richardson v. McKnight, 521 U.S. 399, 177 S. Ct. 2100 (1997). The facts alleged by the plaintiff are evidence that the defendants were acting "maliciously and sadistically to cause harm," they would support a jury verdict in the plaintiffs favor.

## II. The Complaint States A Claim Under The Eighth Amendment

The Supreme Court has ruled that "deliberate indifference to serious medical needs of prisoners" is cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The complaint alleges facts that state a constitutional claim under this standard.

### A. The plaintiff has a serious medical need.

The defendants argue that the plaintiff's medical problem is not "serious" because it was not "life-threatening or even potentially fatal" and that there is no evidence that

plaintiff's condition was "detrimentally exacerbated". Defendants' special report

answers page 45. They are wrong for the following reasons. Exhibit A1-2, C4-5

First courts generally agree that a medical need is "serious" if it "has been diagnosed

by a physician as mandating treatment.... "Johnson v. Busbee, 953 F .d 349, 351

(8th Cir. 1991); Gaudreault v. Municipality of Salem, Mass., 923 F .2 205, 208

(1st Cir. 1990); Monmouth County Correctional Institution Inmates v. Lanzaro, 834

F. .2d 326, 347 (3d Cir. 1987) cert. denied, 486 U.S. 1066 (1988); Ramos v. Lamm,

639 F .2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981) and cases

cited. In this case, the prison doctor thought the plaintiff's problem was serious

enough to require treatment, and he prescribed medication for it. Complaint page 9

no. 14. Exhibit C4-5

Farmer v. Brennan, 511 U.S. at 842. A medical need is considered "serious" if it causes

pain, discomfort, or threat to good health. The plaintiff's problem is therefore serious

under the holding of the above cited cases.


Second a medical condition may be serious if it "significantly affects an individual's daily

activities." McGuckin v. Smith, 974 F .2d 1050, 1060 (9th Cir.1992). Plaintiff's "severe

rheumatoid arthritis" have had serious consequences for her. The complaint alleges

that her pain in her joints are so serious that at times she is unable to walk which also

have caused her to be unable to read, write, or leave her dorm for meals or activities.

Complaint at page 11 no.19. Thus, the chronic pain "significantly affect" the plaintiff's

daily activities.


Finally, courts have acknowledge that conditions that cause significant pain are serious

medical needs. McGuckin v. Smith, 974 F .2d 1050, 1060 (9th Cir. 1992) ("chronic and substantial pain" indicates that a medical need is serious); Boretti v. Wiscomb, 930 F .2d 1150, 1154-55 (6th Cir. 1991)(needless pain is actionable even if there is no permanent injury); Dean v. Coughlin, 623 F.Supp. 392, 404 (S.D.N.Y. 1985) ("conditions that cause pain, discomfort, or threat to good health" are serious). This is true because a chief purpose of the cruel and unusual punishment clause is to prevent the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. at 104 (citation omitted). The complaint alleges that the plaintiff has suffered sigginficant and recurrent pain from her rheumatoid arthritis. Complaint pages 7, 9, 10 and 11. This pain is sufficient to make the plaintiff's medical need "serious." There is sufficient evidence in the record to conclude that plaintiffs chronic illness in her joints especially her elbow constituted a "serious medical condition" when she came into the custody of Tutwiler Prison for Women on April 21, 2004. Such that even a lay person would recognize the need for a doctor's attention. Plaintiff's elbow is fused and permanent loss of mobility in that arm. Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347(medical need is serious if it imposes a "life-long handicap or permanent loss") In this case the plaintiff has stated facts that would permit a lay person to conclude that her problem was serious. These facts are the pain she suffered, the degree of interference with her daily activities and the fact that the prison doctor prescribed medication for her,  but less effective medication for her serious condition. What either party might or might not show on motion for summary judgment is simply not before the court at this point. For these reasons, the Complaint suffeciently alleges a serious medical need on the part of the plaintiff.

## B. Perrion Roberts' Physical And Mental Pain Resulting From Her Job Assignment

Defendants argue that they assigned plaintiff to housekeeping only temporarily until her

arm healed. At that time defendants' knew of her disability and refused to honor the

doctors orders. Defendant Warden Deese was notified about plaintiffs condition and

strenous work assignment she **never** responded. Williams v. Norris, 148,F.3d 983, 987

(8th Cir. 1998)(officials violated Eighth Amendment by failing to take any action to

rescue inmate with medical restrictions from "work that was dangerous to his health

and that in fact resulted in damage to him") Sanchez 144 F.3d at 1156 (forcing inmate

with previous back injury and light-duty status to load sandbags into truck would

volate Eighth Amendment. Plaintiff was made to unload housekeeping supplies

weighing over 16 lbs off the supply truck. Plaintiff fractured her right arm lifting the

heavy supplies. Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972)(inmate was

assigned to work detail more strenous than his medical classification permitted.

In addition to the physical injuries, plaintiff suffered extreme and extensive mental pain.

There is evidence that plaintiff's condition was and is "detrimentally exacerbated.

Exhibit A-1

## C. Officials Knowledge Of Plaintiffs Serious Medical Need

Defendants argue that they were not notified of plaintiffs' disability.(Albrights' Aff).

All defendants' were notified formally and informally through inmate request forms,

letters, complaints, grievances and medical records from surgeon. McElligott v. Foley

182 F.3d 1248, 1256 (11th Cir. 1999)(inmates "nearly constant complaints about

the pain he was having deterioration and weight loss,  along with doctors examination

were suffcent to put doctor and nurse on notice of substantial risk of serious harm).

Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999)(inmates three letters and complaint

put officials on notice of his mental problem.

1. Defendants denied Plaintiff Medical Attention

Defendants' refused plaintiff medication and therapy recommend by her orthapedic surgeon which caused severe joint pain and futher deteroiation of her joints. Defendants called such medication by surgeon "Junk Science". ͮ ᴱˣʰⁱᵇⁱᵗ ᴱ⁻² Defendant Englehardt prescribed medication for plaintiff that didn't stop or ease her pain. West v. Keve, 571 F.2d 158,162 (3d Cir. 1978)(deliberate indifference standard met when doctor chooses easier, but less effective method of medical care. LaFaut v. Smith, 834 F.2d 389, 393-94 (4th Cir. 1978) failure to provide rehabilitation therapy recommended by orthapedic specialist. Defendants refused to honor rheumatologist orders. Defendants refused to order plaintiffs arthritis medication for over fifty (50) days.

> The Supreme Court wrote that the constitution probhits
> officials from "intentionally denying or delaying access
> to medical care or intentionally interfering with
> treatments once prescribed.

Estelle, 429 U.S. at 104-05. Defendants refused to give plaintiff medication that would at least ease her pain and suffering temporarily. Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988) (delay in providing treatments that "eliminated pain and suffering at least temporarily" could violate constitution) Plaintiff injury to her arm while on work detail and the progression of her illness has caused the lost of mobility and fusion in her arm. Exhibit _A-1_. McBride v. Deer 240 F.3d 1287, 1289-90 (10th Cir. 2001) alleged loss of function in leg was sufficient to support delay of - treatment claim).

The defendants' Deese, Albright and Hawthorne refused to review plaintiffs request, complaints and grievances concerning the inadequate care she was receiving from healthcare defendants. Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992)(stating

that corrections official whose job was to review and respond to inmates medical needs could be liable for failing to do his job when he was on notice of prisoners medical needs).

## D. Defendants' Conduct Amounts To Deliberate Indifference

The complaint alleges that the prison doctor denied plaintiffs medication from her surgeon and medication from the rheumatologist. He honored one prescription from the rheumatologist for plaintiffs arthritic condition, but prison officials have om some occasions failed to keep that medication in stock in the pharmacy. Conplaint at page 8 no. 7 and 6 no. 3.

"[I]ntentionally interfering with the treatment once prescribed" is on of the forms of deliberate indifference cited by the Supreme Court Estelle v. Gamble, 429 U.S. at 105. Many decisions have noted that failing or refusing to provide medication prescribed by physicians constitutes deliberate indifference. Aswegan v. Bruhl, 925 F. 2d 676, 677-78 (8th Cir. 1992); Hill v. Marshall, 962 F. 2d 1209, 1213-14 (6th Cir. 1992); Johnson v. Hay, 931 F.2d 456, 461-62 (8th Cir. 1991); Boretti v. Wiscomb, 930 F.2d 1150,1156, (6th Cir. 1991); Johnson v. Hardin County, Ky., 908 F.2d 1280,1284 (6th Cir. 1990); Ellis v. Butler, 890 F.2d 1001, 1003-04 (8th Cir. 1989). It was more than "occasionally" that the plaintiff was denied her medication she was denied her medication more than half the time, Wardrop v. Evans, 871 F.2d at 1033 grossly incompetent or inadequate care can constitute deliberate indifference, the prisoners medication was discontinued abrutly and without justification).

The defendants also argue that a prisoner's disagreement with her medical treatment does not violate the Constitution. That is true, but it is not applicable in this case. Here, the prison doctor agreed that the plaintiff should receive medication just not medication

from her surgeon or outside rheumatoid arthritis doctors who is specialized and trainned in rheumatoid arthritis. Also the other defendants' the Warden, Deputy Warden, Lieutenant Ellis and nurses have obstructed the plaintiff's prescribed medical care as failing to give her access to her medication and to ensure that it was available in the pharmacy.

Defendant Englenandt failed on several occasions to schedule plaintiff follow-up appointments, due lab work to administer medication prescribed by the rheumatoid specialist. Exhibit C-4, D6-7 Murphy v. Walker, 51 F.3d 714, 720 (7th Cir. 1995) (alleged failure to take inmate to follow-up examination, as instructed by doctor and administer prescribed Tylenol for pain) Jones v. Simek, 193 F.3d 485,490 (7th Cir. 1999) (prison doctor's refusal to follow advice of neurology specialists who were treating inmate could amount to deliberate indifference).

Degemdamt Englenardt argue that he frequently examined plaintiff as well as changed her medication frequently he did nothing about the fracture in her right arm or the excurciating pain she was experiencing associated with her condition. Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) ("nor does the fact that [prison doctor] frequently examined Hathaway necessarily vindicate him]... A jury could infer deliberate indifference from the fact that [doctor] knew the exttent of Hathaways pain, knew that the course of treatment was largely ineffective and declined to do anything to change or improve Hathaway's condition.") Englehardt stated in his affedavit that the medication he prescribed was to reduce pain and is not intended to stop progression of her condition. Whioe caused her arm to fuse. Defendants argue that treatment provided for paindif did not adversey effect her arthritic condition defendants also argue that plaintiffs arm is not fused that plaintiff

rheumatologist never stated that her arm was fused. This is not true, it clearly states on plaintiffs X-Ray report dated Feburary 17, 2006. Exhibit _A-/_ that plaintiff right elbow is severely deformed of the proximal due to old healed fracture and a visible postereior fat pad suggest joint effusion. Specialist didn't document fusion, but stated it to plaintiff,  witness by Officer Maxwell. Defendant Englehardt is untrained in internal medical care and according to Dr. Puisis report Exhibit_A 3-4_ should not have been providing general internal medical care.

Plaintiffs rheumatoid specialist advised healthcare that she needed aggressive treatnent and medication Exhibit_C-4_. Defendant Englehardt ignored the specialist orders. Williams v. O'Leary, 805 F. Supp. 634,638 (N.D. III. 1992) (evidence that prisoner's private doctor advised prison medical staff of his needs, and they disregarded them, supported a deliberate indifference claim.

Defendant Mobley refused plaintiff of proper medical care after giving plaitiff too much medication and medication that wasn't hers. She also violated plaintiff's due process by not treating her as an overdose patient. Tillery v. Owens, 719 F. Supp. 1256, 1305-06 (W.D. Pa. 1989) (lack of proper administration of medical services and general disorganization of nursing services contributed to an Eighth Amendment violation). Defendant Wright never responded to any of the complaints or grievances about Nurse Mobley and her actions, upon information and belief Wright was the registered nurse in charged of medical care, answering and solving problems complained in complaint and grievance forms she was also responable for giving appeal forms which she denied plaintiff of several times. Nurse Binion also refused plaintiff medical care when plaintiff complained that her heart was fluttering and days after plaintiff filed a complaint and grievance Binion wrote a body chart dated days

after the incident without the presence of the plaintiff PHS0059 and Exhibit D-5
you can clearly see that there was no emergency body chart made on the plaintiff on
the day of the incident altering or falsifying medical records Constitutes deliberate
indifference.

      1. Defendants argue that plaintiff has no claim against defendant Prison Health
Services. This is not true, Prison Health Services hired a retired OBGYN to pratice on
Chronic care patients, they failed to provid follow-up care with outside specialist, they
failed to provide therapy and medication to the plaintiff because of cost, they also failed
to provide medication ordered by a specialist in a timely manner and assure that there
are no lapses in inmates medication. Defendants also aruge that there is no allegation
of any causal connection of any kind between any alleged act or ommission of Prison
Health Services and any Constitutional violation alleged by plaintiff, this is not true,
defendant Prison Health Services is and was the entity responsible for providing
medical care to those housed a Tutwiler Prison For Women. Defendants Englehardt,
Wright and Mobley were all medical personnel employed by Prison Health Services,
Inc. Samuel Englehardt, Marion Wright and Catherine Mobley is sued in their official
and individual capacity as the doctor and nurses of Tutwiler Prison For Women at
the time of the incidents forming the basis of this lawsuit. Despite plaintiffs complaints,
Prison Health Services and its employees, defendants Englehardt, Wright and Mobley
did little or nothing to evaluate the medical needs of Ms. Roberts. Prison Health
Services, as noted previously, is the entity responsible, pursuant to an agreement
between it and the Alabama Department of Correctional, for providing medical care
to those housed at Tutwiler Prison For Women. Defendants Englehardt, Wright and
Mobley were all medical personnel employed by Prison Health Services. If, either

expressly or by default Prison Health Services permitted others to decide or determine

policy, it is liable for their actions if these policies prove unconstitutional. Defendants

failed to provide even that level of diagnostic care that they themselves believed

necessary. The Knowledge of the need for medical cared and intentional refusal to

provide that care has consistently been held to surpass negligence and Constitute

deleberate indifference. See Robinson v. Moreland, 655  F .2d 887 (8th Cir. 1981). In

Ramos v. Lamm, 639 F.2d 559,575 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 101

S. Ct 1759, 68 L. Ed.2d 239 (1981) the court said:

> Deliberate indifference to serious medical needs is shown
> when prison officials have prevented an inmate from
> receiving recommended treatment or when an inmate
> is denied access to medical personnel capable of
> evaluating the need for treatment.

In this case the plaintiff alleged that the defendants knew that medical care was

necessary but simply refused to provide it, because of the cost and to cover up

wrongful acts. Intentional failure to provide service asknowledged to be necessary is

the deliberate indifference proscribed by the Constitution. See Woodall v. Foti, 648 F

.2d 268, 272-73 (5th Cir. 1981). Defendants failed to secure medical care for plaintiff

because of the cost. Futhermore, if necessary medical treatment has been delayed for

non-medical reasons, a case of deliberate indifference has been made out. Archer v.

Dutcher, 733 F.2d 14,17 (2d Cir. 1984). Prison Health Services was directly involved in

plaintiff injuries, her injuries is a result of  Prison Health Services policy and/or custom.

Defendant Englehardt denied plaintiff therapy and medication because of the price of

the treatments. Finanical constraints may not be used to justify the creation or

perpetuation of Constitutional violations. Rufo v. Inmates of Suffolk County Jail, 502

U.S. 367, 392-93  (1992); Harris v. Thigpen, 941 F .2d 1495,1509 (11th Cir. 1991).

Tutwiler Prison For Women has a duty to provide adequate medical care both under the United States Constitution and under Alabama Law. Thus, if Prison Health Services and/or its employees have a responsibility to make final decisions regarding a requirement that a prisoner cannot receive medical care because it is a financial burden on the healthcare provider, then their acts, policies and customs become official policy. Therefore making Prison Health Services and its employees liable for the inadequate medical care of the plaintiff. Hearn v. City of Gainesville, 688 F .2d 1328 (11th Cir. 1982). In Hearn, the court made clear that where a governmental entity delegates the final authority to make decisions then those decisions necessarily represent official policy 688 F .2d at 1334.

   2. Defendants argue that plaintiff did not exhaust her administrative remedies. This is not true, becsuse one there are no administrative remedies for inmates to exhaust a Julia Tutwiler Prison For Women. Plaintiff has exhausted all other available remedies. Plaintiff have requested several times for grievance forms and appeal forms if available. Although appeal forms are not a standard operating procedure at Tutwiler. If it is, inmates are not made aware of any appeal forms only that it states it at the end of the grievance form. Inmates at Tutwiler are only given complaint and grievance forms. Defendants argue that plaintiff only submitted two (2) grievance forms since her incarceration. This is not true see Exhibit D 5-7, E 1-3 for others. The evidence further establishes that the defendants have failed to acknowledge plaintifffs other request, complaints and grievances therefore trying to have her claimed dismissed for failure to exhaust, but you can clearly see that she has exhausted within her means. Here, there is substantial evidence that the defendants disregarded a clear and obvious risk of harm and a serious medical need to the plaintiff. As a result, plaintiff

suffered further physical injury and pain. The defendants failure to take any steps -

much less any reasonable ones - to prevent this inadequate medical treatment

makes them liable, and at minimum, precludes summary judgment in their favor.

## Conclusion

For the foregoing reasons, defendants request for summary judgment should be

denied.

Dated this 12th day of June, 2006          Respectfully submitted,

                                   Plaintiff Perrion Roberts

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA


<u>Perrion Roberts #159116</u>
Plaintiff

vs.

2:05-CV-1236-MHT

<u>Gladys Deese, et al.,</u>
Defendant's


## Plaintiff's Statement of Disputed Factual Issues

Defendant's have requested for Summary Judgment on the plaintiff's claim concerning inadequated medical care. Persuant to Rule 56 of the Alabama rules of court, the plaintiff submits the following list of genuine issues of Matrerial Fact that require the denial of defendants request.

1. Whether the plaintiff was transported to Tutwiler with medication.

2. Whether the plaintiff was given any of the medication before the defendant's threw it away.

3. Whether the plaintiff received standard medical care before her arm fused.

4. Whether the plaintiff's medication and treatments from outside specialist was ignored by the defendant's.

5. Whether the plaintiff offered more than two complaints of grievances to

those defendant's before the loss of mobility in her arm.

6.  Whether the plaintiff was ever administered a plan by the defendant's to alleviate the excruciating pain.

7.  Whether the plaintiff ever received by the defendant's therapy to help her with mobility.

8.  Whether assigning the plaintiff to housekeeping by the defendant's was assigned in good-faith effort to allow her arm to heal or maliciously and sadistically to cause harm.

9.  Whether the delay in ordering plaintiffs medication for over fifty days by the defendant's applied in good-faith effort or maliciously and sadistically to cause harm.

10.  Whether orverdose of medication and someone elses medication given by the defendant's to the plaintiff applied in good-faith effort or maliciously or sadistically to cause harm.

11.  Whether the plaintiff's medication recommended by an outside specialist changed by the defendant's medically justified or from their purposeful use of unnecessary harm.

12.  Whether the lack of training in internal medicine by the defendant's caused the loss of mobility in plaintiff's arm.

13.  Whether the every three months examination of plaintiff's mammogram recommended by the specialist due to an abnormal test result was not compliedd with by the defendant's due to good-faith efforts or maliciously or sadistically to cause harm.

14.  Whether the plaintiff's blood work and urinalysis checked only four times

from March, 2005 to December, 2005 after the specialist recommended it to be

checked every month because of the highly toxic medication he prescribed to the

plaintiff applied by the defendant's in good-faith effort or maliciously or

sadistically to cause harm.

15. Whether the plaintiff was refused therapy and medication by the defendant's

because of the cost applied in good-faith effort or maliciously or sadistically to cause

harm.

June /2, 2006

Perrion Roberts # 159116
Julia Tutwiler Prison For Women
8966 U.S. Hwy 231
Wetumpka, Al 36092

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

Perrion Roberts # 159116
      Plaintiff

        vs.                                   2:05-CV-1236-MHT

Gladys Deese, et al.,
      Defendant's

## Declaration in Opposition to Defendants Request
## for Summary Judgment

Perrin Roberts, being competent to make this declaration and having personal knowledge of the matter stated therein, declares pursuant to 28 U.S.C. section 1746:

    1.  I am the plaintiff in the above titled case.  I make this declaration in opposition to defendant's request for summary judgment on my claim concerning the inadequate medical care against me by defendants Deese, Albright, Hawthorne, PHS, Englehardt, Wright, and Mobley.

    2.  The defendant's affidavit s claim, in summary, that since my arrival to Tutwiler they have provided me with the best medical care, and that I did not arrive with any medication.  They claim that I don't have any allergies and I don't know the difference between allergic and side effects.  They claim that my surgeon didn't order arthritis medication or therapy after my surgery.  They claim that he only ordered several

narcotic medications.  They claim that they sent me immediately to specialist for my condition and that they honored his treatments.  The claim that I didn't have any pain and was never refused any arthritis medication, but I had taken to much medication when in fact it was the nurse who gave me to much  medication and medication that was not even mine.  They claim that I had not exhausted all of my available remendies.  They also claim that they assigned me a job in housekeeping temporarily until my arm healed,  and that they had no documentation submitted to them about my disability.  They claim that when I had come to them about inadequate medical treatment that I was recieving they notified the proper people to handle the problem.  They claim that there was no lapses in my medication.

3.  The defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved.  These issues are identified in the accompanying Statement of Disputed Factual fact to be filed by the plaintiff pursuant to Rule 56 of the Alabama Rules of Court.  The facts are set out in this declaration.

4.  On April 21, 2004, I arrived at Tutwiler with two medications Celebrex and Lorcet.  My medication was taken from the transport officer and given to health care by Officer Harper.  The nurse told me that they are not allowed to give me my medication that it will be thrown away.  I told her it had only been a few weeks since I had surgery and that I was in excruiating pain.  She told me that it wasn't anything that she could do about that.  So I asked her if I could see the doctor and she said no.  I was then placed in the recieving dorm where I was unable to bathe or groom myself.  I went several days without bathing or any assistance.

5.  April 29, 2004, I saw  Dr. Englehardt and I told him what medication I was

on, he told me that it was too expensive and that PHS would not pay for it. He also told me that no one goes to therapy.

6. May 18, 2004, Dr. Englehardt sent me to an orthapedic that perscribed Celebrex and a brace. Dr. Englehardt ignored the orthapedics order and said that he will use Indocin. Dr. Englehardt had no medical justification in disregarding the outside specialist order nor did he document in my medical records to the reason why? I never recieved the medication or the brace.

7. Dr Englehardt said that my surgeon perscribed me several different narcotic medications and no therapy. Dr. Englehardt perscribed me one tylenol every twelve hours, because he said that I wasn't in alot of pain maybe just a little because of my arthritis. He said that every one has a litle arthritis and that I will be alright. I explained to him that i have severe Reheumatoid Arthrits and I have had three surgeries and I am in severe pain everyday all day. He said that he couldn't give me anything stronger but the tylenol then later he perscribed procogestic which didn't help my pain at all. He considered Celebrex and vitimins junk science. He refused for a long period of time to give me an arthrits medication then he tried me on Methotrexate and Azulfidine which I was not responding to. Dr. Miller states that despite various medication I still have joint pain and because my failure to respond to medication I had to have surgery. (PHS0019) he states that I was participating in therapy (PHS0020) he states that he precribed Lorcet 10 and (PHS0026) and he prescribed Celebrex and Prednison. He never prescribed me several narcotic medication. *Exhibit B-2*

8. Dr. Englehardt prescribed me several different medication that was not for my progressive illness an that did nothing for my excuriating pain. He said that there was no known medical treatment to stop the progession of rheumatoid arthritis and the

medication prescribed to only reduce pain, not stop the progression of the condition (Englehardt Affidavit at p. 4) He couldn't have intended to stop chronic pain with over the counter Tylenol he didn't care about stopping the progression just let me become more deformed and cripple or even die. Dr. Englehardt caused severe injury and damage to my arm, it is fused I have limited mobility in my dominating arm. I am cripple in that arm for the rest of my life, I can no longer take care of myself without help. There are several medication and treatments that can help me, Exhibit $C1-3$ and $C6$ Dr. Englehardt is a retired obstetrician the primary doctor at the time. He have no experience or training in Rheumatoid Arthritis he couldn't have possibly known how to treat me effectively. Dr. Puisis an expert in correctional health care. He is the court ordered prison monitor for the Laube v. Campbell class action lawsuit. He also stated that Dr. Englehardt sould not be providing general internal medical care, because he was untrained Exhibit $A3-4$ Dr. Englehardt did not know how to treat me properly nor what medication was best suited for me, and because he didn't know how to treat me he allowed my elbow to fuse and lose mobility he didn't consider my condition serious enough to treat aggressively.

9. I put in several sick call request sometimes 8 or more before I am seen by the prison doctor.

10. Dr. Englhardt prescribed me medication for abdominal pain (PHS0078) without even giving me an examination.

11. Dr. Englhardt sent me to Dr. Pinchback November 10, 2004. He is an orthapedic and he told me that there wasn't anything that he could do but put my arm in a split and recommend me to a rheumatologist, because I didn't need surgery. Dr. Englehardt waited 4 months to send me to a rheumatologist by the time I finally seen

the rheumatologist my right arm was fused. I can't touch my shoulder. I have very limited mobility or use of my right arm Dr. Pinchback even stated that he felt that my elbow would respond to an alteration in my arthritis medication. Dr. Englehardt refused to change my medication other than stopping naprosyn which I am allergic to and continue the methotrexate which I wasn't responding to.

Dr. Englehardt prescribe me medication that I was allergic seven times prior to me filing this complaint. I put in around seventeen sick call request about my severe pain before I saw the rheumatologist. I didn't see a rheumatologist until eleven months after Dr. Englehardt knew of my chronic illness through my medical file from Dr. Miller my surgeon. Dr. Jakes the rheumatologist ordered me a CBC, Platelet count, Urinalysis and complete metabolic profile checked monthly to monitor for asymstomatic drug toxicity, they have only done this four times between March 2005 to December 2005. And Dr. Jakes said that it is a must that it is done every month, he also took me off the medication that Dr. Englehardt had me on and prescribed four different medication three for my arthritis and one for depression.

Dr. Jakes said that I need to be treated aggressively or I will become progressively more disable by this problem. Exhibit C 4

14. On March 21,2005 I went to pill line at the Annex aroune 7:15pm. Nurse Mobley was giving out medication. She gave me Tylenol, Motrin, Indocin, Zantac, Plaquenil, Azulfidine and two unidentified red pills which appeared to be Elavil a mental health drug. I started feeling nausea at first then I was having severe stomach pains and started vomiting then experienced severe dizziness. I was unable to walk alone my heart was racing, I was sweating really bad and my vision was blur. I went to the office up post and she sent me back to see the nurse. I told Nurse Mobley

what was going on and she told me in front of Officer Mills all I need to do is sleep it off. Officer Mills told me to go and lie down that he will come and check on me. So I left and by the time I made it to my bed I fell out on the floor a couple of inmates helped me up. They carried me to the Officer on post. Officer Lacy instructed them to take me to see Sgt. Harvey which Nurse Mobley had left so she immediately sent me up to Tutwiler to be seen by health care. Nurse Mobley was the only nurse seeing inmates at that time. She made the statement I don't know why she is acting like that all she needs is to go to sleep. Nurse Mobley took my vitals and said that I was just fine. She told me to drink water and go to sleep. Then she said in her affidavit that she said that I told her that I took too much medication on my own without her giving it to me my medicine was not Keep On Personal (KOP) at that time. I was afraid to go to sleep I thought that I was going to die. I never ask Nurse Mobley to alter or change my medication. Nurse Mobley did give me all that medicine Exibit 𝔅 1-3

Five days after the incindent with Nurse Mobley I was still sick and put in a sick call. They are trying to say that I said in my sick call that I was sick from medicine given to me by Dr. Jakes, but that is not true. I said that I have not received the medication that Dr. Jakes had prescribe for me nor had they done blood work (PHOTO copy sent) I said that I was still sick from the medication given to me on March 24. I never said that I saw Nurse Mobley on May 29, 2004.

If I was not incarcerated I would have immediately went to my rheumatologist before my fused and lost mobility, and got aggressive treatment and therapy like I did for the left arm. But I couldn't do that since I am in the care of the State of Alabama and a retired OBGYN that refused and even thought that I didn't need such treatment . Now no surgeon can reverse the fusion. I have to live the rest of my life with a deformity.

Englehardt prescribed Medrol Dose Pack January 27, 2005 and never gave it to me (PHS0187). He said that he prescribed me arthritic pain medication Indocin and Torodoc these are not for rheumatoid arthritis pain. My pain is chronic over the counter medication does not help me at all. Rheumatoid Arthritis effect everyone different and has to be treated different. And everyone don't show the same expression of pain.

On April 21, 2005 I saw Dr. Jakes I had not been given three of the four medication that he had precribed the last visit. The medicine was Relofen, Lexapro and Protonix and blood work once a month. He prescribed Prilosec 20 mg a day I did not receive it either. Dr. Englehardt and PHS refuse to cooperate with the outside specialist.

On March 29, 2005 I saw Dr. Smith for an mammogram it was abnormal and he wanted a follow-up ultrasound in three months and I was never sent back nor did Dr.Englehardt or Marion Wright tell me about the abnormal test even after I had asked about it. Exhibit E(

On June 23, 2005 I saw Dr. Jakes he stated that once your joints fuse no surgery can reverse it. He also recommended an aggressive treatment call TNF, but not while I am in prison because other medication he prescribed PHS and Dr. Englehardt will not fill. He ordered blood work again because health care is just refusing to do it every month.

On July 26, 2005 I was in excruciating pain in both arms I couldn't move them and in my ankle and knee. I was having a hard time standing and walking during sick call so Sgt. Sr. Fuller had the Officer on post to call health care for me to be seen by the doctor and health care never called back.

On July30, 2005 my rheumatoid medication ran out. I notified health care

that day received it approximately fifty one to fifty three days later. Because of the

lapses in my medication I suffered severe pain and stiffness in my joints. Health care

said that I tell them on my August 7, 2005 sick call that my medication was out.

I told them it first ran out they should have took care of it then. I shouldn't have to

keep telling them to do there job.

On September 22, 2005 I saw Dr. Jakes and he said that I was getting worse

and need to be treated aggressively. He said that he don't know what to do if

DOC is not going to pay for the treatments that I need. He requested to see me in

three months. I didn't see him until March 27, 2006.

I do not believe that any adverse reaction to medication automatically

transfer to the conclusion that I am allergic to that medication. I know what I am

allergic to and we do not fill out any medical forms about us the doctors and nurses

does that and they know that Dr. Englehardt prescribed medication that I am allergic to

several times (PHS0086,174,184,185,186,187 and 196).

I have filed several complaints, grievances and request to the medical unit. I

have even requested for such forms even appeal forms and I was denied by health

care. Exhibit D5-7, E1-3

Dr. Englehardt ignored the severe side effect that I was having from Indocin

stomic with Indocin if you have any stomach pain report it to your doctor and he

suppose to take you off. It only takes about 7 to 10 days for a doctor to know if the

medication is best for this particular patient. Dr. Englehardt didn't even see me he just

prescribe me some Zantac.

I was unable to file an appeal indicating my objection to or disagreement

with the response provided by Marion Wright or anyone else, because Tutwiler do not

have _____ forms at least when you ask for one they will not give it to you.

    25. Marion Wright told me that she have arthritis and she have to learn to live
with the ____ ____ told me that there was nothing that they could do about my pain.
When ____ ____ about a grivance or appeal form she said that they didn't have any.
And ____ ____ one, because there was nothing that they could do for me. I asked
her for ____ ____ for pain at that moment, because I was in so much pain right then or
could ____ ____ she told me no. She said if I drink some water that my pain would
stop.

    26. On August 14, 2005 I was taken to health care, because I was dizzy and my
heart fluttering. I saw Nurse Binion coming out of the break room which I had been
sitting ____ ____ for about 20 minutes. I was waitint to see her it was on a Sunday .
She ____ ____ was wrong in the hallway. I told her and she said that she would
put ____ ____ doctors list for Tuesday, I never saw the doctor. She didn't do an
exam ____ ____ did not want to be distrub.

    ____ 16, 2005 I filled out a complaint about my arthritis medication
being ____ ____ thirteen days and about Nurse Binion. I still did not see a doctor. They
sent my complaint back and nurse Binion said see body chart. She did not do a body
chart ____ ____ I went to health care on August 14, 2005 and I did not go to health
care ____ ____ 25, 2005. I was not present for this body chart and it is incomplete you
can ____ ____ has been falseified.

    ____ on my medication administration record (MAR) has been altered
and ____ ____ (PHS0169,171 and 191).

    ____ call request appears to have been altered also dated October

    ____ about April 2004 I went to job board and was denied Trade School.
Albany ____ because of by disablity I couldn't go to Trade School and he was putting

about April 2004 I went to job board and was denied Trade School. Albright because of by disablity I couldn't go to Trade School and he was putting me in housekeeping. I tried to tell him that I had just had surgery and that I couldn't do such strenuous work. He said that he didn't want to here it, I was going to be in housekeeping and that was it. I hurt my arm in housekeeping lifting 20lb of supples, sweeping mopping and washing windows.

Albright ask me why I wasn't wearing my sling I told him that my surgeon want me to wear it see (PHS0019) and that Dr. Englehardt was for and that he will not give me any therapy so that I could learn to use my arm again. I told him then about my problems with healthcare before my arm ever the position that it is in now. He never did anything about it. Exhibit D1-3

November 1, 2004 I sent Albright a request to speak with him. I didn't speak to him November 12, 2004 two days after I saw Dr. Pinchback and I told him then that Dr. Pinchback had recommended me to a rheumatologist. Albright stated that he saw me November 2, 2004 and as a result of this interview I was seen by healthcare the following day. This is untrue, Albright didn't see me until after I had already been seen by healthcare and the rheumatologist. Abright had no barron on me being seen by healthcare or outside specialist, because by the time he saw me I had already been seen. On my request to Albright I only stated that I needed to speak with him, he had no idea about what I wanted to speak to him about Exhibit E 4. On November 26, 2004 I sent Abright another request, I didn't speak to him until November 30, 2004 I spoke to him about my medical, classification and art classes that they were having. Albright asked me to put in a request about everything that we talked about he would look into it. I put the request in on December 1, 2004

I ha... ... ... ... ... results. On October 6, 2005 I put in a request to Albright that my

art... ... ... ..vas out for 30 days. I received no response from him. My

me... ... ... ..ur for 53 days.

... ... ...ry 5, 2005 I sent Deese a request about the problems that I was

having ... ... ...thcare concerning my medical, and that I was in severe pain in my

elbo... ... ... ...nd that Dr. Englehardt keep prescribing me medication that I am

allerc... ... ...ceived no response.

... ... ...didn't receive a response from healthcare or any other official

ab... ... ... ... ...wrote the ACLU about what was going on with my medical. They

w... ... ... ...ers on two different occasion. Deese did not respond, I sent

se... ... ... ...speak with her and she never responded. Exhibit D3-4

... ... ...awthorne about my problems with my arthritis medication and she

said ... ... ...Deese and healthcare. I didn't receive my medication for several

wee... s

... Cont...ery to defendants' affidavits, I exhausted all of my remedies that was

availab... ... ...I requested medical help from everyone over and over again. My

req... ... ... ...repeatedly. Dr. Englehardt never gave me any pain medication

the ... ... ...ease my pain and suffering temporarily. I would lay awake everynight

cryin... ... ... ...e pain was so severe that I couldn't sleep or eat. The defendants'

did... ... ... ...ess to be serious enough to respond to me in an appropriate manner,

thus ... ... ...severe pain and a permanent disability.

... ... ...ants' have claimed that I had two surgeries on my knee and one

surge... ... ...elbow ( special report p. 3) this is not true. I had one surgery on

my ... ... ...gery on my left elbow and one surgery on my right elbow

(PHS0019,18 and 25). When I wasn't incarcerated I received proper medication treatments and therapy on my left elbow after surgery and it is fine. Why the defendants' keep giving this court false information is beyond my understanding.

41. Dr. Englehardt told me that he couldn't give me celebrex or send me to therapy because it cost too much and PHS will not pay for it or approve it.

42. The foregoing factual allegations create a genuine issue of matereial fact and will if proved at trial, entitle me to judgment, as explained in the brief submitted with this declaration.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Perrion Roberts # 159116

June 12, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING HAS BEEN

SERVED UPON *Office of District Court, Attorney General + Balck + Bingham* BY THE U.S.

FIRST CLASS MAIL, THIS _12th_ DAY OF _June_ , _2006_ .

PETITIONER